ADAM GORDON
United States Attorney
P. KEVIN MOKHTARI
Assistant U.S. Attorney
California Bar No. 253283
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Tel:  (619) 546-8402
Email:  Kevin.Mokhtari@usdoj.gov

Attorneys for the United States of America

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>ZHIYI ZHANG (18),<br>　　aka "Cream Pablo,"<br><br>　　　Defendant. | Case No.: 25-CR-1765-TWR<br><br>**UNITED STATES' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO DETAIN BASED ON SERIOUS RISK OF FLIGHT AND DANGER TO THE COMMUNITY** |

　　　The UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Adam Gordon, and Assistant U.S. Attorney, P. Kevin Mokhtari, hereby files its Supplemental Briefing in Support of its Motion to Detain Based on Serious Risk of Flight and Danger to the Community.

**I.    ARGUMENT**

　　　Defendant Zhiyi Zhang, aka "Cream Pablo," should be detained pending trial because he is a serious risk of flight, and because he is a danger to the community.  The Bail Reform Act mandates the release of a person pending trial unless the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community…." 18 U.S.C. § 3142(e)(1).  To obtain an order of detention, the government may show that a defendant

either poses a flight risk or a danger to the community, but is not required to show both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

The government must establish the risk of flight by a "preponderance of the evidence" and must demonstrate that there is no condition, or combination of conditions, that would reasonably assure defendant's appearance at future proceedings if he is released on bond. *Id*. at 1406-07.

The government must establish danger to the community by clear and convincing evidence. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *United States v. Reynolds*, 956 F.2d 192, 192-93 (9th Cir. 1992). Theft from vulnerable victims constitutes an economic danger to the community that warrants pre-trial detention. *See United States v. Reynolds*, 956 F.2d 192, 192-93 (9th Cir. 1992); *United States v. Alzoubi*, No. 14-CR-3325-BAS, 2015 WL 3485432, at *3 (S.D. Cal. June 1, 2015) ("Danger to the community may include pecuniary or economic harm."); *cf. United States v. Posey*, No. 18-CR-00408-CRB-1, 2020 WL 2838793, at *1 (N.D. Cal. June 1, 2020).

The Court takes into account all available information concerning the factors set forth in Section 3142(g) in determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of any other person and the community including: 1) the nature and circumstances of the offense charged, 2) the weight of the evidence against the person, 3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug and alcohol abuse; and 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). Applying the § 3142(g) factors, the Court should order defendant detained pending trial.

**A.     Nature and Circumstances of the Offense Charged [18 U.S.C. § 3142(g)(1)]**

The nature and circumstances of the offense charged are serious, aggravated, and weigh heavily in favor of detention. The offense involves a multinational organized crime fraud ring that targeted elderly Americans in which Zhiyi Zhang was a member.

Since December 2020, HSI has led a multi-agency investigation, including the FBI and IRS-CI, into a sophisticated fraud scheme where unsuspecting victims were contacted in a variety of ways by the targets of this investigation (the "conspirators") and tricked into contacting a call center. Once a victim contacted one of the conspirators at the call center, the conspirators then utilized a variety of often pre-scripted scams and social engineering techniques to gain the victim's trust and often to gain remote access to the victim's computer. With the victim's trust obtained, the conspirators then further used social engineering techniques to defraud the victim into sending money to the conspirators. The most frequent way the fraud was accomplished was by a refund scam in which the conspirators tricked the victim into thinking he/she has been accidentally "over-refunded" thousands of dollars. The conspirators then told—and at times threatened—the victim to pay back the alleged excess refund via wire transfers or shipments of cash and/or cash equivalents, like gift cards.

In many instances, conspirators requested that victims send money via overnight or express mail couriers to co-conspirators who were in the United States based on whatever the initial ruse was that initiated the phone call with the victim. The domestic operation, which included defendant Zhiyi Zhang, used fake names and temporary lodgings to receive the packages of money sent by victims of the fraud scheme. The conspirators then frequently changed locations both to increase the number of packages that could be received without alerting law enforcement and to thwart law enforcement generally. The most common temporary lodgings used by the conspirators were app-based short-term rentals. Once conspirators received the victim packages, they often documented receipt of the packages through photos and/or videos. Members of the conspiracy who received the victim packages then delivered the cash-laden packages to other members of the conspiracy, so that the proceeds of the fraud could be laundered.

Based on the investigation, the conspiracy was started by at least 2019 in the Los Angeles area by a group of Chinese nationals. As the conspiracy gained momentum, it expanded both in members and in its geographic placement. To expand the conspiracy's

footprint, the leaders of the organization recruited Chinese nationals—many of whom were Chinese visa overstays or Chinese nationals who were in the United States illegally. The conspiracy continued through at least 2023, though based on recently seized information, it was ongoing as recently as April 2025.

During the investigation, investigators identified over 2,000 elderly victims who had been targeted by the organization with an estimated loss of $65 million. The average victim was over 70 years-old. Many of the victims suffered substantial financial hardship, and numerous reported losing their entire life savings as part of the fraud scheme. As part of the scheme, the conspirators specifically targeted elderly Americans using technical support, government impersonation, bank impersonation and refund scams. And members of the conspiracy used fake IDs, matching fake names given to victims and addresses corresponding with the short-term rental locations to retrieve packages of cash sent by victims.

During this investigation, investigators discovered a community of "scambaiters," individuals who, for a variety of reasons, pretend to be putative victims and gather information and/or expose various scammers. Some of these scambaiters record their interactions with the scammers and upload videos of these sessions and monetize these videos on YouTube. Through the investigation, agents discovered that some of these videos showed target subjects of this investigation engaged in the charged fraud scheme.



**Scammer Payback** (https://www.youtube.com/c/ScammerPayback) is a YouTube channel led by an individual with the moniker Pierogi. Pierogi from Scammer Payback records videos during which he attempts to identify and expose individuals engaged in various forms of online and telephonic scams. In addition, Pierogi regularly uses various

technological means to alter his voice to make him appear to be an elderly man or woman. He does so because scammers often target the elderly, whom, based on my our investigation, are more susceptible to such fraudulent schemes and less likely to have the technical and/or computer knowledge to detect the fraud.



**Trilogy Media** (https://www.youtube.com/c/trilogymedia) is a YouTube channel led by a self-proclaimed "scam-fighting duo" named Ashton Bingham and Art Kulik (pictured above). As part of the Trilogy Media channel, Bingham and Kulik similarly record videos during which they attempt to identify and expose individuals engaged in various forms of online and telephonic scams.

From time to time, the Scammer Payback and Trilogy Media channels do collaborations where they work together to expose scammers. For example, Pierogi from Scammer Payback will act as though he is a victim and will agree to send a money-laden package to the scammers, while Trilogy Media will attempt to deliver the package and then confront the individuals receiving the package in person and while on video. The two channels will then release similar videos to their respective channels.

In one of the Scammer Payback and Trilogy Media collaborations, they captured evidence of defendant Zhiyi Zhang at a short-term rental location receiving a victim package.

**June 27, 2020 - YouTube Video – Zhiyi Zhang.** On or about June 27, 2020, a YouTube video was posted to the Scammer Payback channel entitled "$35,000 AirBNB Scammer Confronted FACE to FACE!" Contemporaneously the Trilogy Media channel

posted a video entitled "WE CAUGHT A MONEY MULE SCAMMER (Red-Handed)." The two videos were a collaboration between the channels. During the June 27, 2020 videos, information related to this investigation was revealed. Screenshots of the videos are shown below.



During the Scammer Payback video, Pierogi from Scammer Payback pretended to be an elderly woman. The scammers connected to Pierogi's computer and then pretended to refund him money. During the interaction, the scammers told Pierogi that an over-refund has occurred. Pierogi was ultimately given a name and an address—"Hans Bum" and an address in South San Francisco, CA—to send the alleged over refund via express mail delivery. Pierogi then passed the name and address information to Bingham and Kulik from Trilogy Media, who then traveled from the Los Angeles area to San Francisco to "deliver" the package. Kulik and Bingham then acted like they were delivering a package sent by a purported victim, but instead confronted the intended recipient about being part of a fraud scheme. The video shows Kulik and Bingham confronting an Asian male at a short-term rental. At one point, Kulik confronted Zhang that his name was not really "Hans Bum" and asked to see his ID. Zhang then pulled out his California driver's license and showed him his real name, Zhiyi Zhang. While the YouTube video was blurred to comply with YouTube privacy guidelines, agents obtained the unblurred footage and confirmed that the person in the video matched the likeness of Zhiyi Zhang. A still photo from the unblurred video appears below.



Kulik and Bingham then began interviewing Zhang about his involvement. Zhang admitted that he was receiving packages and being compensated to do so. Zhang admitted that he made $300-$400 per package. During the Trilogy Media YouTube video, Zhang had a phone call with an accomplice and spoke to him on the phone. Kulik then took the phone and started talking to Zhang's co-conspirator. After Kulik confronted the co-conspirator, the co-conspirator hung up the phone. Zhang admitted that he had already retrieved approximately 10 packages. Below is a still photo from the YouTube video.



  Through extensive follow-on investigation, investigators identified the individual in the video as Zhiyi Zhang. Among other things, investigators obtained the unblurred YouTube video. Although the driver's license the Asian male presents to Trilogy Media is small, it matches the California driver's license of Zhang. In addition, during the investigation, agents identified the short-term rental account used to book the location where the video was filmed. The short-term rental account was in the name "Cream Pablo" and associated with Zhang's college email address ending in .edu. In addition, the government ID associated with the short-term rental account is the California driver's license for Zhang. Notably, Zhang's driver license matches the license the Asian male provided during the YouTube video.

  Agents also linked Zhang to the moniker "Cream Pablo," which is the name on his short-term rental account. Based on open-source research, investigators identified a YouTube music video labeled "Cream Pablo – Call On My Phone Ft ireadsouls." In the music video, Zhang can be seen rapping in Chinese (Mandarin) while wearing distinctive glasses and a blue surgical mask around his neck. Zhang appears to be wearing matching glasses and a similar surgical mask in the YouTube video. Based on this and other records, Zhang was identified as the user of the Cream Pablo short-term rental account and a member of the conspiracy. Zhang's financial and other records also linked him to other charged members of the conspiracy, including Wen Chang Wang (2), Guangli Lin (8), and Wenzhi Chen (9). By cross-referencing Zhang's short-term rental bookings with FedEx and UPS records, agents identified approximately 59 packages directly linked to Zhang. Based on victim interviews and other financial analysis, those packages alone represent an estimated $1.8 million in victim loss.

  Nor was this the only charged member of the conspiracy who was uncovered by Scammer Payback's YouTube videos. Two other co-defendants in the same indictment, Dudu Chen and Huajian Chen were also captured during other YouTube videos engaged in the conspiracy. On or about November 28, 2020, Scammer Payback posted a video entitled "Scammers 'Customer' Package Intercepted and Confronted." The video was

8

another collaboration with Trilogy Media, which posted its own version of the video. The video played out similar to the video showing Zhiyi Zhang. This time, defendant Dudu Chen, who is charged in the same indictment, was confronted at a short-term rental in Dana Point, California. Chen was identified by his New York State driver's license when he was confronted by the YouTubers as being a scammer.




Once again, investigators obtained the unblurred version of the video, which helped identify Dudu Chen as a member of the conspiracy. Indeed, Dudu Chen called one of the managers/organizers in the conspiracy asking for help when he was confronted, as shown in the still photo below. Through a torrent of investigative steps, agents identified the person Chen called as co-conspirator, Weining Su, who is charged in a related indictment and who was arrested in March 2025. Case No. 25CR1097-TWR.



On or about March 6, 2021, Scammer Payback and Trilogy Media published another collaboration video. This time, the video was posted to the Trilogy Media YouTube channel. In the video, Art Kulik and Ashton Bingham worked with Pierogi from Scammer

9

Payback. Pierogi once more acted like a victim and purported to be defrauded into sending cash in a UPS package to an address in Cathedral City, CA, where Kulik and Bingham delivered the package and confronted the individual receiving the package. Although the video was posted in March 2021, the actual encounter is from November 24, 2020. Through the investigation, agents identified the person encountered during the video as co-defendant Huajian Chen, yet another charged member of the conspiracy.



Each of these YouTube videos demonstrates the fraud and money laundering scheme and shows how scammers in India collaborated with an organized crime ring operating in the United States to receive cash packages sent by elderly victims. Put another way, the strength of the evidence is strong.

Zhang's sentencing exposure underscores the seriousness of the offense. Even if Zhang pleads guilty and accepts responsibility, the applicable guidelines range is substantial, and has the potential for a 40-year statutory maximum on Count 1; and a 20-year statutory maximum on Count 2.

| | |
|---|---|
| Base Offense Level (2B1.1) | 7 |
| Amount of Loss > $1.55M - §2B1.1(b)(1)(I) | +16 |
| Substantial Hardship > 25 victims - §2B1.1(b)(2)(C) | +6 |
| Misrepresentation re Gov't Agency- §2B1.1(b)(9)(A) | +2 |
| Relocation to Evade Law Enforcement; Sophisticated Means; Substantial Part of Office Outside US – §2B1.1(b)(10)(A)-(C) | +2 |
| Possession/Use of False IDs/Authentication Feature §2B1.1(b)(11) | +2 |
| Money Laundering §2S1.1 | +2 |
| Vulnerable Victim §3A1.1(b) | +2 |

| | |
|---|---|
| Organizer/Leader §3B1.1(a) | +4 |
| Acceptance of Responsibility §3E1.1(b) | -3 |
| **Total Offense Level** | **36** |
| **Guidelines** | **188-235 months** |

These maximum penalties combined with the applicable guidelines range underscore the seriousness of this offense. The nature and circumstances of the offense are aggravated and weigh heavily in favor of detention.

**B.     Weight of the Evidence Against the Defendant [18 U.S.C. § 3142(g)(2)]**

Although this factor is to be given the least weight, there is probable cause to believe that the Zhang committed the charged offense. Zhang is charged by indictment and was targeted as part of a long-term, yearslong federal investigation.

During the investigation, the government obtained extensive evidence of Zhang's involvement in the crime as outlined above. Agents also seized extensive electronic and financial evidence tying Zhang to the crime.

As mentioned, although the indictment covers only through 2023, the conspiracy is also believed to be ongoing based on the 2025 arrest of two of Zhang's co-conspirators. The weight of the evidence is strong and weighs strongly in favor of detention.

**C.     History and Characteristics of the Defendant [18 U.S.C. § 3142(g)(3)]**

**1.     Character:** Zhang's character likewise weighs in favor of detention. Zhang is a member of a multinational fraud and money laundering organization that is responsible for defrauding elderly Americans out of millions of dollars each year. As a member in such an organization, Zhang stands to gain the least by staying and facing the charges. This factor therefore weighs in favor of detention.

**2.     Physical and Mental Condition:** The government does not have any information positive or negative regarding Zhang's physical or mental condition that would weigh on his ability to make court appearances. This factor is therefore neutral.

**3.     Family Ties:** Zhang's substantial foreign family ties likewise weigh in favor

1  of detention. Zhang is a Chinese citizen. His status in the United States is jeopardy given
2  he is charged with two aggravated felonies, a conviction of which would make it virtually
3  certain he will be deported from the United States. Thus, while Zhang has some family
4  ties to the Southern California area, his immigration status, combined with the nature and
5  circumstances of this offense weigh in favor of detention.

6       **4.**     **Employment:** Zhang employment history makes him a significant flight risk.
7  While Zhang appears to produce Chinese hip-hop music, his primary source of income
8  appears to be from money laundering. For example, agents seized the following images
9  from his cellphone on the date of his arrest, showing Zhang with bulk cash

 

Agents also seized images of banded bulk cash with the label "$32,503" and another with the label "42,600" as shown below.

 

5. **Financial Resources:** Zhang's financial resources also weigh heavily in favor of detention. That is because the assets Zhang has in the United States are criminally derived and subject to forfeiture. This likewise weighs heavily in favor of detention because an individual with limited financial assets and substantial foreign ties poses a substantial risk of flight.

6. **Length of Residence in the Community:** Zhang is not a current resident in the Southern District of California. In fact, on the date of his arrest, he was arrested at Los Angeles International Airport. Zhang had been in the Atlanta, Georgia area. Based on Zhang's post-arrest statement, the government believe Zhang was in the Atlanta area picking up proceeds of criminal activity. Zhang's frequent travel throughout the United States, demonstrates he is not tethered to any particular district either. This factor thus also weighs in favor of detention.

7. **Community Ties:** As mentioned, Zhang, a citizen of China, has significant foreign ties. Indeed, multiple of his co-conspirators have fled to China and not returned after the government prosecuted a co-conspirator. Based on his criminal exposure, there is a significant incentive for Zhang to flee, especially because a conviction in this case would make it virtually certain that he will be deported from the United States. This factor weighs in favor of detention.

8. **Past Conduct:** The government also believes that Zhang has been engaged in other criminal conduct. Indeed, in the days before his arrest, Zhang was traveling throughout Georgia. Zhang admitted the purpose of his travel was to retrieve the proceeds of criminal activity. In other words, even on the date of his arrest, he was involved in other, uncharged criminal activity of the same nature as the charges in this case. This weighs in favor of detention.

9. **History Relating to Drug or Alcohol Abuse:** The government is unaware of any history related to drug or alcohol abuse. This factor weighs in favor of setting bail.

10. **Criminal History:** Zhang does not have any criminal history, but he was repeatedly linked to criminal activity during the investigation. Specifically, agents linked

over 2,000 victims and over $65 million in fraud directly to Zhang and his co-conspirators, at least 59 packages sent by victims directly linked to Zhang. Thus, while Zhang has no prior convictions, his history has criminal activity, including recent activity.

**11.    Record Concerning Appearance at Court Proceedings and on Probation, Parole, or Other Release:** Zhang has not been on probation, parole or other release. He therefore does not have any history while on bond. This factor therefore should be treated as neutral.

### D.    Danger to the Community

In addition to being a serious flight risk, there is clear and convincing evidence that Zhang poses a danger to the community. This conspiracy involved the targeting of thousands of vulnerable, elderly Americans. The average victim was over 70 years-old. Many of those victims suffered irreparable economic injury and the loss of their life savings. Some of those victims went on a downward spiral after being victimized. Elderly Americans were repeatedly and systematically targeted as part of the scheme. Many of the victims are so old that they cannot return to the workforce and therefore will live with the impact of the loss for the rest of their lives. And frequently, victims were repeatedly defrauded before they learned they had been victimized. The bulk of the money victims lost was also quickly moved overseas through cryptocurrency transactions, which means the likelihood that victims will ever see any meaningful restitution is low. One of the victims tied directly to Zhang and his closest associates in the conspiracy was a 97-year-old San Diego woman and widow to a Holocaust survivor who lost her entire life savings. That victim was repeatedly defrauded until she had lost everything. Through the investigation, agents identified the packages she had sent containing bulk cash. Those packages were sent to people working closely with Zhang.

As the Ninth Circuit has recognized, danger to the community may "encompass pecuniary or economic harm." *Reynolds*, 956 F.2d at 192-93; *United States v. Lindsey*, 680 Fed. App'x 563, 567-68 (9th Cir. 2017) (holding that "elaborate mortgage fraud scheme that targeted vulnerable and impoverished individuals" demonstrated

dangerousness of defendant to the community); *United States v. Ball*, 2022 WL 229314, at *2 (9th Cir. Jan. 25, 2022) (analyzing danger to the community and affirming denial of compassionate release motion recognizing dangerousness to the community in case involving "telemarketing operation that defrauded elderly consumers of over a million dollars."); *see also United States v. Posey,* 2020 WL 2838793, at *1 (N.D. Cal. June 1, 2020) (Breyer, J.) (denying motion for compassionate release because, under 18 U.S.C. § 3142(g), the defendant posed "a danger to the community if released" where danger was purely economic and defendant had history of "steal[ing] from vulnerable victims").[1] Here, Zhang was a member of an organized crime ring that specifically targeted seniors and stole over $65 million. Nor can Zhang deny that he was involved in such a scheme—as he was specifically informed of the nature of the criminal activity when he was confronted by the YouTubers. Indeed, Zhang continued to have bookings on his short-term rental account, even after the encounter.

The economic and pecuniary harm caused by Zhang and his co-conspirators is order of magnitude greater than other cases where courts have found danger to the community. Plainly, Zhang is a danger to the community and should be detained.

Lastly and by analogy, the law recognizes a rebuttable presumption of danger to the community in felonies that involve *minor* victims. 18 U.S.C. § 3142(e)(3)(E). That is because crimes targeting vulnerable, minor victims are particularly dangerous, involve irreparable damage, and have high levels of recidivism. Those concerns apply similarly to crimes involving vulnerable, elderly victims. As with minor victims, elderly victims are often economically and socially vulnerable, are likely to suffer irreparable injury (from which they may never recover given their advanced ages), and were repeatedly targeted as part of the instant fraud scheme. For each of these reasons, the Court should likewise detain Zhang because he poses a danger to the community.

---

[1] Although *Ball* and *Posey* involve compassionate release motions, such motions require a court to assess a defendant's danger to the community under Section 3142(g). Indeed, both cases cite to the Ninth Circuit's holding in *Reynolds*.

In addition to the economic danger to the community, there is evidence that Zhang, a Chinese national, has also possessed a firearm. Agents seized the following image from his cellphone showing him holding assault-style firearm.



## II.   CONCLUSION

For the foregoing reasons, the Court should order Zhang detained pending trial.

DATED: August 26, 2025                          Respectfully submitted,

                                                ADAM GORDON
                                                United States Attorney

                                                *s/P. Kevin Mokhtari*
                                                P. KEVIN MOKHTARI
                                                Assistant U.S. Attorney